**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 3:17-cr-00132-2** |
| | ) | **Judge Aleta A. Trauger** |
| **DAMION ANDERSON** | ) | |

## MEMORANDUM AND ORDER

Before the court is defendant Damion Anderson's Motion and Incorporated Memorandum Seeking Declaration that 21 U.S.C. § 841(b) Requires Proof of Scienter to Increase the Mandatory Minimum Sentence from Zero Years to Twenty Years. (Doc. No. 101.) In this motion, the defendant argues that due process requires the United States to prove beyond a reasonable doubt that the defendant actually knew that the substance he is charged with distributing included fentanyl in order for him to receive a mandatory minimum sentence of twenty years that applies when a death results from the offense. 21 U.S.C. § 841(b).

The United States responded to the Motion (Doc. No. 114) and, with the court's leave, both a Reply (Doc. No. 119) and a Surreply (Doc. No. 131) have been filed. For the reasons set forth herein, the motion will be **DENIED**.

## I.     BACKGROUND

Defendant Damion Anderson, along with several co-defendants, has been indicted on charges of conspiracy to distribute heroin and fentanyl, the use of which resulted in the death of an individual, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 (Count 1), and possession with the intent to distribute and distribution of heroin and fentanyl, the use of which resulted in the death of an individual, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18

U.S.C. § 2 (Count 2). (Indictment, Doc. No. 1.)

Under 21 U.S.C. § 841(b)(1)(C), the maximum sentence applicable in light of the drug quantity at issue in this case is twenty years,[1] *unless* the government proves the element of a death resulting from the offense, in which case the statute provides for a mandatory minimum of twenty years and a maximum of life, "even if the defendant is completely ignorant that the substance contained fentanyl." (Doc. No. 101, at 1–2.) The defendant argues that, to comport with constitutional due process considerations, the statute must be "construed to require proof of scienter of the offense element which increases the sentence to a mandatory [minimum of] 20 years imprisonment." (Doc. No. 101, at 2.) He argues broadly that § 841(b) adds an element to the offense and, as a result, "creates an offense more serious than, and separate from, the drug offenses in which death or serious bodily injury do not occur." (*Id.*) Consequently, he argues, "each element of that separate offense must require proof of scienter." (*Id.*) The defendant acknowledges that the Sixth Circuit has held that § 841(b) requires "no *mens rea* as to the quantity of drugs or as to the type of drugs," but he nonetheless insists that the Supreme Court "has not considered whether the Due Process Clause requires proof of scienter to increase the sentence when a violation of drug laws results in death." (*Id.*) In short, he claims that he "should not face the potential of a 20-year prison term unless the government proves he knew the substance at issue contained fentanyl, a highly dangerous substance. The punishment should be subject to such a dramatic increase only if the defendant knew the risk of harm and chose to proceed nonetheless." (*Id.* at 7.)

The United States argues, in response, that this field has been well plowed by the Sixth

---

[1] According to the defendant, the drug quantity at issue is such that the United States Sentencing Guidelines prescribe a range as low as 14 months for Criminal History Category I, and as high as 46 months for Criminal History Category VI.

Circuit, which has repeatedly held that § 841(b) prescribes penalties for violations of § 841(a) and does not create a new offense, even when a death is involved, and that the death does not need to be foreseeable to the defendant for the § 841(b)(1)(C) enhancement to apply. (Doc. No. 114.)

In his Reply, the defendant insists that the Sixth Circuit precedent upon which the United States relies, even to the extent it refers to *Apprendi v. New Jersey*, 530 U.S. 446 (2000), does not address his particular due process argument, because *Apprendi* only concluded that the Due Process Clause requires that any facts that increase a statutory maximum sentence must be found by a jury beyond a reasonable doubt. The defendant's argument—whether proof of *mens rea* as to the type of drug involved is required in a federal drug prosecution when a death is involved— was not addressed by *Apprendi*. He also insists that *Apprendi* and its progeny do not "foreclose Mr. Anderson's due process challenge." (Doc. No. 119, at 2.)

In its Surreply, the United States distinguishes the cases upon which the defendant purports to rely and reiterates that § 841(a) incorporates a *mens rea* requirement and that § 841(b) does not create a "separate crime." (Doc. No. 131.)

## II.     DISCUSSION

### A.     Legal Framework

The defendant's argument is perplexing, because he essentially conflates two distinct factors: (1) his alleged participation in the distribution of a substance that contained fentanyl, and (2) the death that allegedly resulted from the use of that substance. Regarding the first of these factors, 21 U.S.C. § 841(a)(1) makes it a crime to "knowingly and intentionally" distribute or possess with intent to distribute a controlled substance. In other words, § 841(a) clearly incorporates a *mens rea* requirement: the defendant must have the intention to possess or to

distribute a controlled substance, without reference to the type (or quantity) of that substance.

Section 841(b) describes the penalties that apply to a person convicted under § 841(a). As relevant here, if the controlled substance at issue is listed in Schedule I or Schedule II, *and* if "death or serious bodily injury results from the use of such substance," the defendant convicted under § 841(a) "shall be sentenced to a term of imprisonment of not less than twenty years." 21 U.S.C. § 841(b)(1)(C). Heroin is a Schedule I drug, 21 C.F.R. § 1308.11(c)(11), and fentanyl is on Schedule II, *id.* § 1308.12(c)(9). In other words, the same penalty would apply regardless of whether the substance in this case was pure heroin or heroin cut with fentanyl.

The Sixth Circuit has long held that § 841(b), insofar as it sets forth penalties that vary based on the quantity and type of drug involved, does not incorporate a *mens rea* requirement, meaning that the government does not need to prove that the defendant knew or intended that his offense would involve a certain quantity of drugs or even that it would involve a specific type of drug, as long as he "knowingly and intentionally" distributed a controlled substance or, under § 846, that he was involved in a conspiracy to distribute a controlled substance. *See, e.g.*, *United States v. Dado*, 759 F.3d 550, 570 (6th Cir. 2014) (holding that, to convict the defendant of conspiring to manufacture, distribute, or possess with intent to distribute 1,000 or more marijuana plants, the government had to prove beyond a reasonable doubt that (1) the defendant knowingly and intentionally participated in a conspiracy to manufacture, distribute, or possess a controlled substance with intent to distribute and (2) the conspiracy involved 1,000 or more marijuana plants, but it did not have to prove beyond a reasonable doubt that the defendant knew that the conspiracy involved 1,000 or more marijuana plants, because it was not required to prove *mens rea* as to the type and quantity of drugs involved in the conspiracy); *United States v. Villarce*, 323 F.3d 435, 436–37 (6th Cir. 2003) (affirming the defendant's conviction for

conspiracy to distribute and to possess with intent to distribute at least 100 kilograms of marijuana, "notwithstanding the alleged absence of evidence that he specifically agreed to distribute such a substantial quantity and specifically intended to distribute that amount").

As the court explained in *Villarce*:

> [T]he government need not prove *mens rea* as to the type and quantity of the drugs in order to establish a violation of § 841. . . . [D]rug type and quantity are irrelevant to the *mens rea* element of § 841(a), which requires nothing more specific than an intent to distribute a controlled substance. Intent is likewise irrelevant to the penalty provisions of § 841(b), which require only that the specified drug types and quantities be "involv[ed]" in an offense.

*Id.* at 439 (internal citations, quotation marks, and footnote omitted).

The defendant in *Villarce* specifically protested that, under *Apprendi* and *Jones v. United States*, 526 U.S. 227 (1999), drug quantity is an element of the offense that must be proved beyond a reasonable doubt if the effect of the drug quantity is to increase the maximum penalty *and* that "*mens rea* must be proved as to every element of the offense." *Villarce*, 323 F.3d at 439. In *Apprendi*, of course, the Supreme Court held that, "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476 (quoting *Jones*, 526 U.S. at 243 n.6). The Supreme Court later extended *Apprendi* to hold that any fact that increases a mandatory *minimum* sentence for a crime is also an "element" of the crime that must be submitted to the jury. *Alleyne v. United States*, 570 U.S. 99, 103 (2013).

The Sixth Circuit rejected the *mens rea* argument in *Villarce* and, even following *Alleyne*, has continued to hold that the drug quantity element of the offense in § 841(b) is entirely independent of the *mens rea* requirement in § 841(a). In *Dado*, for example, the defendant was convicted of conspiring to manufacture more than 1000 marijuana plants, which resulted in a

mandatory minimum sentence of twenty years. 759 F.3d at 569. The jury was specifically instructed that, although the government had to prove the type and quantity of drugs involved in the conspiracy beyond a reasonable doubt, it did not have to prove that the defendant knew what type of drug was involved or how much. *Id.* at 557. On appeal, the defendant argued that the Supreme Court's decision in *Alleyne* "prohibits the imposition of a mandatory minimum sentence absent a jury finding that Defendant had knowledge of the quantity of marijuana involved in the offense." *Id.* at 559. Applying a plain error review, two of the three members of the Sixth Circuit panel reviewing his case rejected this argument, holding that "the first prong of § 841(b) is a strict liability requirement—even if Defendant did not know that his offense involved 1,000 or more marijuana plants, he can be subject to the [20-year] mandatory minimum triggered by that quantity of drugs." *Id.* at 869.

The court purported to recognize "the potential pitfalls of the strict liability punishment scheme imposed by § 841(b)" and recognized that "drug quantity is an element of the offense in § 841, since its effect [in Dado's case] is to increase the maximum penalty." *Id.* at 569, 570. It found that, under *Alleyne*, the jury was required to find the quantity involved beyond a reasonable doubt, but it rejected the defendant's argument that, "after *Alleyne*, we must read § 841(a) and § 841(b) together" to mean that "the 'knowingly or intentionally' element of § 841(a) now applies equally to the 'involved' element of § 841(b)." *Id.* at 570. The court explained:

> Defendant's argument confuses two distinct concepts—quantum of proof and *mens rea*. The Sixth Amendment mandates that the quantum of proof the government must satisfy in a criminal trial is "beyond a reasonable doubt," as opposed to a preponderance of the evidence, clear and convincing evidence, or some other standard. By contrast, the *mens rea* requirement is a creature of statute. To convict a defendant of a § 841(a) offense, the government must prove that the defendant committed the criminal act "knowingly or intentionally," as opposed to negligently or recklessly, for example. Following *Alleyne*, a jury must find beyond a reasonable doubt that Defendant's crime "involved" 1,000 or more marijuana plants. But *Alleyne* did not rewrite § 841(b) to add a new *mens rea*

requirement. Under our precedent, § 841(b) still allows for strict liability as to the type and quantity of the drugs involved in a § 841(a) offense.

*Dado*, 759 F.3d at 570 (quoting *Alleyne*, 133 S. Ct. at 2156); *accord United States v. Jefferson*, 791 F.3d 1013, 1016 (9th Cir. 2015) ("Both drug type and quantity can trigger, or increase, a mandatory minimum sentence . . . and therefore both facts must be proved to a jury beyond a reasonable doubt . . . . This does not mean, however, . . . that the 'knowingly or intentionally' *mens rea* standard . . . applies to the elements found in [the penalty provision]. *Alleyne* provides no guidance as to which facts increase mandatory minimum sentences under a given statute. It addressed only who must determine such facts, and which burden of proof applies." (internal citations and footnote omitted)).

The *Dado* majority expressly declined to reach a due process argument similar to the one Anderson brings now in this court:

> Defendant correctly notes that strict liability punishment schemes are strongly disfavored in criminal law, and points out the potential for anomalous results under the current reading of § 841. Our Circuit has not resolved whether § 841(b) can survive a due process challenge and we do not reach that question today. We simply conclude that *Alleyne* has not overruled our precedent construing § 841(b).

*Id.* at 570–71.[2]

With regard to the "if death results" provision of 21 U.S.C. § 841(b)(1)(C), the Supreme Court and the Sixth Circuit have likewise held that this "is an element that must be proven

---

[2] Judge Merritt dissented, finding that *Alleyne* effectively overrode the presumption that § 841(a) and § 841(b) are unrelated and must be read separately:

> The Supreme Court held that "the core crime and the fact triggering the mandatory minimum sentence"—here, the drug quantity—"together constitute a new, aggravated crime, each element of which must be submitted to the jury." The key word is "together"—sections 841(a) and (b) "together" create a "separate, aggravated" possession crime distinguishable from a violation of section 841(a) alone. The facts of drug possession and drug quantity are no longer irrelevant but totally dependent conditions, both necessary to prove the crime alleged here.

*Dado*, 759 F.3d at 571 (Merritt, J., dissenting) (quoting *Alleyne*, 133 S. Ct. at 2161).

beyond a reasonable doubt; it is not a sentencing factor to be determined by the sentencing judge by a preponderance of the evidence." *United States v. Rebmann*, 321 F.3d 540, 542 (6th Cir. 2003); *see also Burrage v. United States*, 134 S. Ct. 881, 887 (2014) ("Because the 'death results' enhancement increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."). The Supreme Court specified that the *government* must prove that the drug in question is the "but-for cause of" the victim's death or injury. *Burrage*, 134 S. Ct. at 887–88.

Although the *Burrage* Court had also granted certiorari on the question of "[w]hether the defendant may be convicted under the 'death results' provision . . . without separately instructing the jury that it must decide whether the victim's death by drug overdose was a foreseeable result of the defendant's drug-trafficking offense," *id.* at 886, it did not actually address that question. In the wake of *Burrage*, those circuit courts that have addressed this question have concluded that proof of the foreseeability of the death is not required. *See, e.g.*, *United States v. Burkholder*, 816 F.3d 607, 610–17 (10th Cir. 2016) (rejecting the defendant's argument that the trial court had erred in refusing to instruct the jury that, in order to convict under § 841(b)(1)(E)(i), it must find that the death in question "was a reasonably foreseeable result" of the defendant's distribution of a Class III controlled substance, and instead holding that "'but for' causation was all that was required"); *United States v. Alvarado*, 816 F.3d 242, 250 (4th Cir. 2016) (holding that the district court did not err in refusing to instruct the jury that § 841(b)(1)(C) contains a foreseeability requirement), *cert. denied*, 137 S. Ct. 492 (2016); *United States v. Volkman*, 797 F.3d 377, 392–93 (6th Cir. 2015) (noting that the defendant conceded that the district court had "properly" given the jury a "'but-for' causation instruction" that specifically stated that the government "need not prove that the death was foreseeable to the defendant, but the government

must prove beyond a reasonable doubt that the death would not have occurred had the mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance dispensed by defendant, not been ingested by the individual"). In other words, the "if death results" provision does not incorporate a *mens rea* requirement either.

Finding no support for his argument in recent Supreme Court or Sixth Circuit cases, the defendant here relies instead on two older Supreme Court cases holding that a *mens rea* requirement must typically be read into criminal statutes that do not expressly incorporate *mens rea* as an element of the offense, *Morissette v. United States*, 342 U.S. 246 (1952), and *Staples v. United States*, 511 U.S. 600 (1994). In *Morissette*, an individual was convicted of knowingly converting to his own use property of the United States, in violation 18 U.S.C. § 641, which made it a crime to "embezzle[], steal[] purloin[], or knowingly convert[]" government property. 342 U.S. at 248. The defendant had collected and sold spent bomb casings from a government bombing range. His defense at trial was that he had not intended to steal, believing the property to have been abandoned and of no value to the government. The district court refused to instruct the jury regarding the defendant's intention, finding that the defendant knew that he was on government land and had intentionally taken the spent casings from land belonging to the government. The Sixth Circuit affirmed, finding that the statute under which the defendant was convicted "requires no element of criminal intent." *Id.* at 250. The Supreme Court reversed. In doing so, the Court recognized the existence of an expanding number of crimes with respect to which criminal intent was not an element, but it declined to "expand the doctrine of crimes without intent to include those charged" in that case. *Id.* at 260. Specifically, it noted that "[s]tealing, larceny, and its variants and equivalents, were among the earliest offenses known to the law that existed before legislation; they are invasions of rights of property which stir a sense

of insecurity in the whole community and arouse public demand for retribution, the penalty is high and, when a sufficient amount is involved, the infamy is that of a felony." *Id.* at 260–61. State courts of last resort had "consistently retained the requirement of intent in larceny-type cases." *Id.* at 261. Thus, it concluded that Congress's failure to include an element of intent in the statute had to be understood "in the light of an unbroken course of judicial decision in all constituent states of the Union holding intent inherent in this class of offense, even when not expressed in a statute." *Id.*; *see also id.* at 262 ("Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act."). The Court therefore held that the "mere omission . . . of any mention of intent will not be construed as eliminating that element from" the particular statute in question. *Id.* at 263. The Court further held that, "[w]here intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury." *Id.* at 274. In other words, *Morissette* was based on principles of congressional intent and statutory construction—the Court did not reference due process at any point in the decision and recognized generally that criminal statutes, and the elements of any particular crime, are matters reserved to the legislature.

In *Staples v. United States*, 511 U.S. 600 (1994), also relied upon by the defendant, the defendant likewise did not raise a due process challenge, and the majority opinion makes no reference to the Due Process Clause.[3] In that case, the defendant was charged under the National Firearms Act for unlawfully possessing a machine gun that was not properly registered with the

---

[3] The only reference to the Due Process Clause appears in Justice Stevens' dissent, which simply notes that the defendant did not raise a due process claim.

federal government. The question before the Court was whether the government should have been required to prove beyond a reasonable doubt that the defendant knew that the weapon he possessed fell within the statutory definition of a machine gun. In addressing this issue, the Court reiterated that "'[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute.' Thus, we have long recognized that determining the mental state required for commission of a federal crime requires 'construction of the statute and . . . inference of the intent of Congress.'" *Id.* at 604–05 (quoting *Liparota v. United States*, 471 U.S. 419 (1985), and *United States v. Balint*, 258 U.S. 250, 253 (1922)). The Court also recognized, however, that " [t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence" and that, because "offenses that require no *mens rea* generally are disfavored," typically "some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime." *Id.* at 606 (citations omitted). In holding that the defendant's knowledge that the unregistered weapon in his possession qualified as a machine gun was a necessary element of the crime, the Court rejected the government's argument that the statute regulating the possession of unregistered machine guns fit "in a line of precedent concerning what we have termed 'public welfare' or 'regulatory offenses, in which we have understood Congress to impose a form of strict criminal liability through statutes that do not require the defendant to know the facts that make his conduct illegal." *Id.*

The Court also noted, in *dicta*, that the Narcotic Act of 1914, addressed in *Balint*, "was intended in part to minimize the spread of addictive drugs by criminalizing sales of certain narcotics." *Id.* The Court had held in *Balint* that the Narcotic Act "required proof only that the defendant knew that he was selling drugs, not that he knew the specific items he sold were

'narcotics' within the ambit of the statute." *Staples*, 511 U.S. at 606 (citing *Balint*, 258 U.S. at 254). In other words, *Balint* dealt with the type of "public welfare offense[] created by Congress" that permissibly "dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing." *Id.* at 607. As the Court explained:

> Typically, our cases recognizing such offenses involve statutes that regulate potentially harmful or injurious items. In such situations, we have reasoned that as long as a defendant knows that he is dealing with a dangerous device of a character that places him in responsible relation to a public danger, he should be alerted to the probability of strict regulation, and we have assumed that in such cases Congress intended to place the burden on the defendant to ascertain at his peril whether [his conduct] comes within the inhibition of the statute. Thus, we essentially have relied on the nature of the statute and the particular character of the items regulated to determine whether congressional silence concerning the mental element of the offense should be interpreted as dispensing with conventional *mens rea* requirements.

*Id.* (internal quotation marks and citations omitted). In other words, the Court expressly recognized that statutes regulating the distribution of illegal drugs are public welfare offenses that may permissibly dispense, to some extent, with the *mens rea* requirement.

### B.       The Defendant's Motion

As previously indicated, the defendant contends only that due process considerations require the United States to prove his knowledge and intent to sell a substance that contained fentanyl, because a death allegedly resulted from the sale of that substance, thus potentially increasing the mandatory minimum sentence to twenty years. This court is persuaded by the above-referenced precedent that due process does not require proof of the defendant's *mens rea* as to the type of drug being distributed, for purposes of § 841(b)(1)(C), particularly under the circumstances presented here.

Under 21 U.S.C. § 841(b)(1)(C), it is the fact that a death resulted that increases the mandatory minimum sentence to twenty years, assuming that the government is able to prove

beyond a reasonable doubt that (1) the defendant intended to distribute a controlled substance; (2) the controlled substance was on Schedule I or Schedule II; and (3) the decedent's use of drugs distributed by the defendant was the "but-for" cause of her death. The defendant's situation is distinguishable from that of the defendant in *Dado*, because the potentially increased penalty is not based on the quantity or type of drugs distributed but on the fact that a death resulted from that distribution. Thus, even if the Sixth Circuit were to address the due process issue skirted in *Dado* (*see* Note 2, *supra*), such a holding would not inure to the defendant's benefit, because it is clear that no *mens rea* requirement attaches to the "if death results" element.

Moreover, while the type of drugs is also an element of the offense, the defendant does not specifically argue that the government has to prove, as a matter of due process, that he knew the substance in question contained heroin, a Schedule I controlled substance. He argues only that the government must prove that he knew the substance contained fentanyl. The presence of fentanyl mixed into the product, however, does not, *per se*, increase the potential penalty, either the mandatory minimum or the permissible maximum sentence, since the statute refers to Schedule I *or* Schedule II drugs. Thus, the potential penalty would remain the same whether the government proves that it consisted of heroin alone or heroin cut with fentanyl.

The defendant's primary concern, although not expressly articulated, appears to be based either on an assumption that the presence of fentanyl made the substance more dangerous, and thus more likely to lead to a user's death, or that the fentanyl itself, rather than heroin, was the but-for cause of death. With regard to the first presumption, as indicated above, courts have held, even following *Alleyne*, that the foreseeability of the death resulting from use of drugs distributed by the defendant is not an element that the government is required to prove. *See, e.g.*, *Alvarado*, 816 F.3d at 249–50 ("[T]he 'plain language [of § 841(b)(1)(C)] reveals Congress'

intent' to 'put[] drug dealers . . . on notice that their sentences will be enhanced if people die from using the drugs they distribute.'" (quoting *United States v. Patterson*, 38 F.3d 139, 145 (4th Cir. 1994))); *Burkholder*, 816 F.3d at 610–17 (holding that the government was not required to prove that death "was a reasonably foreseeable result" of the defendant's distribution of a controlled substance; *Volkman*, 797 F.3d at 392–93 (stating that the government "need not prove that the death was foreseeable to the defendant"). The defendant does not actually argue to the contrary or suggest that some element of *mens rea* should be incorporated into the "if death results" provision.

Further, even if the proof establishes that fentanyl was the but-for cause of death, and notwithstanding Judge Merritt's dissent in *Dado*, nothing in the Supreme Court's jurisprudence suggests that due process requires proof of the defendant's knowledge that the drug he sold also included fentanyl, as long as he knew that it was an inherently dangerous controlled substance. It is well established that Congress defines the elements of a criminal offense, *Staples*, 511 U.S. at 604–05. While "some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime," *id.* at 606, congressional intent regarding *mens rea* is clearly communicated in § 841. Subsection 841(a) incorporates an unmistakable *mens rea* requirement; subsection 841(b)(1)(C) does not. The court must presume that Congress's intent is reflected in that choice. Moreover, the Supreme Court has expressly recognized that statutes regulating "potentially harmful or injurious items" may permissibly dispense with a *mens rea* requirement when the substance involved is so inherently dangerous that the defendant "should be alerted to the probability of strict regulation." *Id.*

In addition, the courts have long taken notice, as a matter of common sense, that heroin *per se*, even when not adulterated with fentanyl, is an inherently dangerous drug, the use of

which always carries the risk of death or serious injury. *See, e.g.*, *United States v. Sweger*, 413 F. App'x 451, 456 (3d Cir. 2011) (finding that the record supported the district court's conclusion that the defendant "should have had every expectation that someone could be harmed, or die, as a result of ingesting the heroin distributed by him," because "[h]eroin is illegal and dangerous, and the ingestion of it alone may kill even a first-time user"); *Nossan*, 647 F.3d at 826 (recognizing that, by "twice sending heroin and cocaine to [the decedent], [the defendant] engaged in dangerous activities, disregarding the grave risks accompanying the use of the drugs"); *United States v. Moglia*, 3 M.J. 216, 217 (C.M.A. 1977) ("[T]he transfer of heroin was an inherently dangerous act which directly affected the person of the deceased."). In other words, the defendant may reasonably be presumed to have known that the substance he is charged with distributing was inherently dangerous, regardless of whether he knew that it contained fentanyl.

In sum, the court finds that due process does not require proof of the defendant's intention to distribute a substance that contained fentanyl as well as heroin, even though a death allegedly resulted from the use of the substance. Due process requires proof beyond a reasonable doubt that the defendant intended to distribute a controlled substance, that the substance was a Schedule I *or* Schedule II controlled substance (or both), and that the substance was the but-for cause of Katherine Stone's death.

## III.    ORDER

The defendant's Motion Seeking Declaration that 21 U.S.C. § 841(b) Requires Proof of Scienter (Doc. No. 101) is **DENIED**.

It is so ORDERED.

ENTER this 21st day of May 2018.

_____

ALETA A. TRAUGER
United States District Judge